BARNETTE, Judge.
This is a suit on a promissory note secured by mortgage brought by plaintiff, All State Credit Plan Jefferson, Inc., in the sum of $2,790.47 together with legal interest, fees and costs. Named as defendants are Steve Daniels and his wife Josephine, deceased, and for whom no succession proceedings had been opened at the time of filing the petition nor at the time of trial. An attorney was appointed as curator ad hoc to represent the deceased defendant. *471 From a judgment in favor of plaintiff, defendants have appealed.
In its petition plaintiff alleged that it had loaned to the defendants a certain sum of money on February 7, 1966, and that the defendants executed a promissory note and a mortgage in the principal sum of $4,260 upon property which they owned in Jefferson Parish.
The defendants paid a number of payments and the suit is for the balance due upon the mortgage in the sum of $2,790.47. The defendants filed an answer denying the allegations of plaintiff’s petition and further alleged that defendant Steve Daniels denied that he had any knowledge of the contents of any mortgage or promissory note that may bear his signature and/or the signature of his deceased wife. Defendants also specifically pleaded usury, mistake and error, and fraud.
The pleas of usury, mistake and error, and fraud are affirmative defenses and as in the case of all affirmative pleas, defendants carry the burden of proving these allegations.
Defendant Steve Daniels testified in his own behalf. His statements are conflicting and contradictory on many points but the essence of his testimony is that he denies ever signing any mortgage with plaintiff. He testified that the only time he ever borrowed money from plaintiff was approximately ten years ago when he borrowed $200. He admitted that each month his wife sent a payment to plaintiff but testified that he thought this was for an insurance policy he had with the plaintiff. Plaintiff introduced into evidence the note, the mortgage accompanying the note and various checks dating from 1960 through 1966 payable to the order of “Steve & Josephine Daniels,” “Josephine Daniels,” or “Mrs. Steve Daniels” and endorsed accordingly. The mortgage and the note were both signed “Steve Daniels” and “Josephine Daniels.” Defendant denied that the signatures on the mortgage or on any of the checks was his own or his. wife’s. However, he did admit that his signature was on the promissory note.
Joseph Noto, office manager of the plaintiff corporation, testified that he had been doing business with defendants since he entered the employment of plaintiff in 1962. He testified that defendants’ account dated back to 1956. He stated that the defendants usually would want to borrow more money from plaintiff before paying out the existing loan. Plaintiff would then determine the existing balance on the defendants’ account; rebate some of the discount for the unexpired term; and then refinance on a discount basis the resulting balance added to the new amount of cash borrowed. Noto testified that on February 7, 1966, both defendants approached him about a $250 loan. At this time defendants had a loan with plaintiff that had a balance due of $3,195. He testified that after the plaintiff rebated $798 of capitalized interest, thereby reducing the pay off balance to $2,400, the new total of $2,650 was refinanced for a term of 60 months and the payment was $71 per month. He testified that the loan was discounted at approximately 11.7% interest. Noto testified that both defendants were present at the signing of the note and mortgage and both were fully apprised of the transaction. George Vatter, assistant manager of plaintiff corporation, testified to the same effect.
An examination of the signatures on the various checks issued in defendants’ names and the signatures on the mortgage and note reveals that while there is a slight variance in the signatures on a few of the instruments, generally, the signatures admitted by defendant Steve Daniels as his own and his wife’s on the note match the signatures on the other instruments. There can be no doubt that defendants did on numerous occasions borrow money from the plaintiff. It is inconceivable that Daniels could believe that he was paying $71 per month for ten years on a $200 loan.
*472 As was stated above, the pleas of fraud, error and mistake, and usury are affirmative defenses and defendants carry the burden of proof. LSA-C.C.P. art. 1005; Automatique New Orleans, Inc. v. Capitano, 211 So.2d 757 (La.App.4th Cir. 1968); Fontana v. State Farm Mutual Automobile Ins. Co., 173 So.2d 284 (La.App.3d Cir. 1965); Fitch v. Broussard, 156 So.2d 127 (La.App.3d Cir. 1963); Walton v. Bufkin, 135 So.2d 309 (La.App.2d Cir. 1961); Ray v. Martin, 117 So.2d 839 (La.App.Orl.1960). Defendants generally alleged these defenses in their answer without alleging any specific acts of plaintiff that would constitute these offenses. From a careful reading of the testimony, evidence, and exhibits filed in the record, we cannot find where defendants have proven any specific facts to establish any of these defenses.
As was stated by the trial judge in his written reasons for judgment this case is a perfect illustration of the tragedy which befalls an elderly couple who do not fully understand the complexities of discount loans and who continuously over a long period of time borrow more and more money and get deeper and deeper into debt to the point where they are faced with the loss of their home. Defendant Daniels was 78 years old at the time of trial. He has no formal education whatsoever and apparently knows very little about finance, relying upon his wife to attend to most of their business. Out of their income of $146 per month they paid to plaintiff corporation $71 per month. However, as pointed out by this court in the case of Clasen v. Excel Finance Causeway, Inc., 170 So.2d 924 (1965), there is no limit to the amount of capitalized interest which may be added to the principal of a note so long as the note does not bear a rate of interest of more than 8% per annum after maturity. LSA-C.C. art. 2924. For a fuller discussion of this subject see Cazalas, Usury Law in Louisiana, 14 Loyola L.Rev. 301 (1967-68) at p. 307. See also Mayfield v. Nunn, 239 La. 1021, 121 So.2d 65 (1960); Soab v. Murphy, 174 So.2d 157 (La.App.4th Cir. 1965); Williams v. Alphonse Mortgage Co., 144 So.2d 600 (La.App.4th Cir. 1962).
We have expressed our concern that the development of the law of usury in Louisiana has been slow and unsatisfactory. See Ciasen v. Excel Finance Causeway, Inc., supra, 170 So.2d at p. 925, footnote 3. The reform needed in this area is a matter which addresses itself to the Legislature of this State and not to the courts. Until such time as the Legislature sees fit to amend present laws relating to discount loans,[1] these hardship cases will continue.
The judgment of the trial court is in the amount of $2,790.47 with interest and attorney’s fees but subject to a reduction for unearned interest if paid before maturity. The appellee does not contest the reduction for unearned interest.
Therefore, for the foregoing reasons the judgment appealed is affirmed at appellants’ cost.
Affirmed.

. Act 28 of 1969 (LSA-R.S. 9:3502 et seq.) is not relevant to discount loans.